* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Glenn, and the briefs and oral argument before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of Deputy Commissioner Glenn and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and of the subject matter. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff (hereinafter "decedent") and defendant-employer on or about January 9, 2002.
3. At the time of decedent's injury, defendant-employer was insured by Legion Insurance Company. Since then, Legion has become insolvent and the North Carolina Insurance Guaranty Association has assumed the risk.
4. Plaintiff alleges that decedent sustained an injury by accident on or about January 9, 2002 while in the course and scope of his employment with defendant-employer.
5. Decedent's average weekly wage at the time of his alleged accident was determined at the Deputy Commissioner's hearing or from a Form 22 to be provided by defendants.
6. The issues to be determined by the Commission are whether decedent sustained an injury by accident while in the course and scope of his employment with defendant-employer on January 9, 2002 and, if so, what, if any, benefits decedent was entitled to receive under the North Carolina Workers' Compensation Act.
7. The Pre-Trial Agreement and all stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACTS
1. Decedent began his employment with defendant-employer on or about June 20, 2001. Decedent's job consisted of assembling and fabricating exterior doors. Decedent and a partner worked across a table from each other, assembling doors that weighed 25 to 400 pounds. Once a door was complete, decedent and his partner lifted the door and placed it on a buggy to take to another part of the workshop.
2. On January 9, 2002, plaintiff and his partner, Paul Shepherd, were working on a door that weighed approximately 100 pounds. When plaintiff lifted the door and turned to place it on the buggy, he felt something pop in his back. Due to the pain, decedent dropped the door onto the buggy and told Mr. Shepherd that he had hurt his back. Decedent left work shortly after his injury.
3. Mr. Shepherd did not recall plaintiff telling him that he hurt his back, but did testify that decedent doubled over in pain and held his back. Mr. Shepherd testified that he saw decedent grimace and hold his back before January 9, 2002 and that when decedent came in to work that morning, he complained that he could hardly get out of bed.
4. Decedent's immediate supervisor, Gary Patrick, was not working at the time of decedent's injury. Troy Waggoner, parts cutter, acted as a supervisor when decedent's direct supervisor was not present. On January 9, 2002, Mr. Waggoner noticed decedent bent over in pain and asked him what was wrong. Decedent told him that he had hurt his back, but Mr. Waggoner testified that decedent denied hurting his back on the job. Mr. Patrick testified that decedent did not report any work-related back injury and neither he nor decedent ever filled out an accident report.
5. On January 10, 2002, decedent went to the North Wilkes Regional Medical Center with complaints of back pain radiating to his leg. He informed the hospital that he hurt his back lifting a door at work, although hospital records indicate that decedent reported that it was not a recent injury. Decedent was given pain medication, taken out of work until January 14, 2002 and was instructed to follow up with his family doctor.
6. On January 14 and 15, 2002, decedent returned to work for defendant-employer. On January 16, 2002, decedent had an unexcused absence from work, and on January 17, 2002, decedent worked a full day. On January 18, 2002, decedent worked a half-day, and thereafter, did not ever return to work for defendant-employer. There is no evidence in the record that any doctor took decedent out of work on January 16, 21, or 22, 2002, and, thus, defendant-employer terminated plaintiff for unexcused absences in accordance with their attendance policy.
7. In late January 2002, Dr. Louis Yancich of Foothills Family Practice treated decedent and referred him to Dr. David L. Kelly, Jr., for evaluation of back and left leg pain.
8. On February 7, 2002, decedent saw Dr. Kelly. Decedent reported that he had back and left leg pain for 7 or 8 weeks. Dr. Kelly diagnosed decedent with a herniated disc at L4-5 with an extruded fragment and recommended surgery to correct the problem. A diskectomy was performed on February 13, 2002 and, on June 10, 2002, Dr. Kelly released decedent to return to light duty work and gave him a 10% permanent partial rating to his back.
9. At his deposition, Dr. Kelly was asked to assume that decedent had no clinically significant back problems before January 8, 2002, and that on January 8, 2002, plaintiff and his co-worker were lifting a door weighing over 100 pounds, when decedent felt a pop in his back along with immediate pain. Assuming those facts, Dr. Kelly testified that it ". . . sound[s] like that injury could have caused his disc to rupture." On cross-examination, Dr. Kelly testified that although he was not sure how reliable decedent's history was, it was not consistent with the emergency room record from January 10, 2002 and his own notes from February 7, 2002. Dr. Kelly was asked by defendants' counsel,
 Given all of what we've talked about here today and the evidence that's been put in front of you including Mr. Snyder's hypothetical, can you actually say that more likely than not the symptoms with which you — or for which you treated . . . [decedent] were related probably, more likely than not, to an incident that happened on January 9th, 2002; or are you more comfortable opining that you just don't know or you can't give it?
Dr. Kelly responded, "I can't answer the question."
10. Based on the evidence of record, the Commission finds that as a result of the incident on January 9, 2002, decedent was unable to work and earn wages from January 9, 2002 until January 14, 2002, when he returned to work. After January 19, 2002, any disability decedent sustained was not causally related to the compensable injury by accident.
11. On July 20, 2003, decedent was involved in an automobile accident that resulted in his death on July 29, 2003.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 9, 2002, decedent sustained an injury by accident arising out of and in the course of his employment with defendant-employer as the result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. As a result of the injury by accident, decedent was unable to work and earn wages from January 9, 2002 until January 14, 2002. However, as decedent was not disabled from work for more than seven days, he is not entitled to any compensation. N.C. Gen. Stat. § 97-28. Decedent's disability, if any, to earn wages after January 19, 2002 was not causally related to the January 9, 2002 injury by accident.
3. Plaintiff is entitled to payment by defendants of all reasonably necessary medical treatment decedent obtained at North Wilkes Regional Medical Center on January 10, 2002. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff for all reasonably necessary medical treatment decedent obtained at North Wilkes Regional Medical Center on January 10, 2002.
2. Defendants shall pay the costs of this action.
This the 31 of May, 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER